IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

Case No.  05-38198

JOHN KENNETH BAIRD
LISA ANN BAIRD

Debtors

**MEMORANDUM ON**
**MOTION FOR EMERGENCY HEARING**

**APPEARANCES:**    John Kenneth Baird
Lisa Ann Baird
Post Office Box 948
Lenoir City, Tennessee  37771
Debtors, *Pro Se*

Richard Eisenbach
Post Office Box 22485
Knoxville, Tennessee  37922
*Pro Se*

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court upon the Motion for Emergency Hearing (Motion) filed by the Debtors, *pro se*, on November 2, 2005, averring that on November 1, 2005, their landlord, Richard Eisenbach, evicted their family, changed the locks on their house, and would not allow them to enter and remove their personal property or essentials in violation of the automatic stay provisions of 11 U.S.C. § 362 (2005). Following a hearing on November 10, 2005, the court entered an Order directing that it would deem the Motion as a request for a determination that Mr. Eisenbach willfully violated the automatic stay.[1]

The trial of this contested matter was held on January 11, 2006. The record before the court consists of six exhibits introduced into evidence, along with the testimony of seven witnesses, Mark Tinnell, Pete McGinley, Chad Estes, Devon Baird, Mr. Eisenbach, and the Debtors.

This is a core proceeding. 28 U.S.C.A. § 157(b)(A) and (O) (West 1993).

## I

Acting *pro se*, the Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter 7 of the Bankruptcy Code on October 31, 2005. In their statements and schedules, the Debtors listed Mr. Eisenbach as a creditor, holding a judgment for possession of their rented house located at 107 Abbott Road, Lenoir City, Tennessee (House), and $7,600.00. Additionally,

---

[1] The November 10, 2005 Order also fixed the January 11, 2006 hearing date on the Motion and identified the issues the court was called upon to resolve as follows:

    A. Whether Richard Eisenbach has violated the automatic stay of 11 U.S.C. § 362(a)?

    B. If the court determines that Richard Eisenbach has violated the automatic stay, whether the Debtors are entitled to recover their actual damages, including costs and attorneys' fees, and, if appropriate, punitive damages, as permitted by 11 U.S.C. § 362(k)(1)?

the Debtors completed the section in their Voluntary Petition entitled "Statement by a Debtor Who Resides as a Tenant of Residential Property" by marking the box that their "[l]andlord has a judgment against the debtor for possession of debtor's residence" and listing Mr. Eisenbach as that party. Mr. Eisenbach obtained this judgment in the Loudon County General Sessions Court on October 20, 2005.

Pursuant to his judgment for possession, on November 1, 2005, Deputy Mark Tinnell with the Loudon County Sheriff's Department arrived at the House with a Writ of Possession. Mr. Eisenbach was also present. At that time, only Mrs. Baird was at home, and upon Deputy Tinnell's arrival, she informed him that she and Mr. Baird had filed for bankruptcy one day earlier. After the filing of the bankruptcy case was confirmed, and Mrs. Baird learned that the eviction was not stayed, she called Mr. Baird at work and asked him to come to the House. At Mr. Eisenbach's direction, Deputy Tinnell changed the locks on the House and instructed Mrs. Baird to vacate the premises. The Debtors were allowed to take some items on that day, but they were not allowed to remove all of their personal possessions at that time. On November 2, 2005, the Debtors filed the Motion, asking the court to intervene, and it was scheduled for preliminary hearing on November 10, 2005.

After several miscommunications regarding the agreed upon date and time that the Debtors could return to the House and remove their personal property,[2] Mr. Eisenbach granted them access to the House on Friday, November 4, 2005. That evening, upon returning to the House after taking

---

[2] At trial, Mrs. Baird testified that on November 1, 2005, Mr. Eisenbach told her that she could return to the House the following morning at 8:00 a.m. to clean up the yard, but he did not show up. Mr. Eisenbach testified that he had agreed to meet the Debtors at 9:00 a.m. on November 2, 2005, but no one showed up or called him. Deputy Tinnell testified that Mr. Eisenbach did tell Mrs. Baird that they could return to the House on November 2, 2005, to clean up the yard, but he did not state whether he recalled a specific time.

3

items to a storage facility, Mr. Baird discovered that two wall heaters and a PlayStation were missing from inside the House. He called the Loudon County Sheriff's Department, and a report was filed. *See* TRIAL EX. 6. Because he did not have a key to lock the House, Mr. Baird remained overnight, and on the morning of November 5, 2005, he discovered that an engine hoist, a gas grill, an engine stand, and a bag of tools were also missing from the yard. Deputy Pete McGinley from the Loudon County Sheriff's Department testified that he went to the House on November 5, 2005 to investigate, and he saw tracks in the yard where items were dragged away.

The Debtors moved personal items on November 5, 2005; however, they did not finish moving their property on that day, and Mr. Eisenbach denied them further access to the House upon the belief that Mr. Baird had the utilities reconnected and was moving back in. On November 10, 2005, all parties appeared in court, at which time it was agreed that Mr. Eisenbach would allow the Debtors to remove their property from the yard from noon on November 10, 2005, until Friday evening, and that they would have access to the House's interior on Saturday, November 12, 2005, to finish removing their property.

When the Debtors arrived that the House on Saturday morning, they had a disagreement with Mr. Eisenbach, and Deputy McGinley was again called to the House. Mr. Eisenbach was denying the Debtors access to the House because they did not bring a U-Haul truck, and he would not allow their nephew, Devon Baird, or their neighbor, Gordon Leonard, onto the property to assist in the move. Deputy McGinley advised the parties that the Debtors had until midnight to remove their belongings, and he left. Later that afternoon, Deputy McGinley returned to the House in response to an argument between Mr. Eisenbach and Mr. Leonard, who was parked near the residence and

4

would not move at Mr. Eisenbach's demand.  Deputy McGinley advised Mr. Eisenbach that he would not require Mr. Leonard to move his vehicle, as it was on the public street, and he left once again.  At approximately 8:00 p.m. that evening, at Mr. Eisenbach's request, Corporal Chad Estes of the Loudon County Sheriff's Department arrived at the House.  Mr. Eisenbach desired the Debtors to leave the property, especially in light of the fact that there were no utilities, and because it was dark, he was concerned for the parties' safety.  Corporal Estes advised Mr. Eisenbach and the Debtors that he intended to honor and enforce their agreement to allow the Debtors access to the House until midnight.

The Debtors left the premises just before midnight on November 12, 2005, with all of their personal property except for a Pro Dish Satellite 500, a 1984 Toyota truck that Mr. Baird was using for the engine parts, five or six garbage cans, and a four-inch, twenty-foot black steel pipe.  Mr. Baird testified that when he drove by the House a day or two later, these items were gone; however, Mr. Eisenbach denied disposing of the Debtors' property.

**II**

On October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which became effective for all bankruptcy cases filed on that date and thereafter, significantly changed the Bankruptcy Code by revising, deleting, and adding many requirements.  Receiving substantial revisions were those sections concerning the automatic stay.  The general basic imposition of the automatic stay was not significantly altered, whereby, unless otherwise

provided by statute,[3] the commencement of a debtor's bankruptcy case still triggers the following protections, as material to this case:

> (a) Except as provided in subsection (b) of this section, a petition filed under section . . . 302 . . . operates as a stay, applicable to all entitles, of—
>
> . . . .
>
>> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>>
>> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [or]
>>
>> . . . .
>>
>> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a) (2005). The automatic stay remains in effect throughout the pendency of the bankruptcy case, to provide debtors with "'a breathing spell' from collection efforts and [] shield[s] individual creditors from the effects of a 'race to the courthouse,' thereby promoting the equal treatment of creditors," *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001), and actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

Nevertheless, the statute expressly excepts certain actions from the automatic stay, a list which was greatly widened under BAPCPA. Now included among those excepted provisions is the following:

---

[3] These exceptions, concerning repeat bankruptcy filers within the one year immediately preceding the pending case, are not applicable in this case.

>   (b) The filing of a petition under section . . . 302 . . . of this title . . . does not operate as a stay—
>
>   . . . .
>
>   (22) subject to subsection (*l*), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor[.]

11 U.S.C. §362(b) (2005).

Despite subsection (b)(22), debtors facing eviction are not entirely without recourse, as subsection (*l*) provides the following limited exception to subsection (b)(22):

>   (*l*)(1) Except as otherwise provided in this subsection, subsection (b)(22) shall apply on the date that is 30 days after the date on which the bankruptcy petition is filed, if the debtor files with the petition and serves upon the lessor a certification under penalty of perjury that—
>
>   (A) under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and
>
>   (B) the debtor (or an adult dependent of the debtor) has deposited with the clerk of the court, any rent that would become due during the 30-day period after the filing of the bankruptcy petition.
>
>   (2) If, within that 30-day period after the filing of the bankruptcy petition, the debtor (or an adult dependent of the debtor) complies with paragraph (1) and files with the court and serves upon the lessor a further certification under penalty of perjury that the debtor (or an adult dependant of the debtor) has cured, under nonbankruptcy law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought by the lessor, subsection (b)(22) shall not apply, unless ordered to apply by the court under paragraph (3) [not applicable].

11 U.S.C. § 362(*l*) (2005).

In summary, eviction proceedings which have resulted in a judgment for possession pre-petition are not subject to the automatic stay unless the debtor performs the following actions: (1) files along with the petition commencing his bankruptcy case and serves upon the landlord a certification under penalty of perjury setting forth the circumstances under state law that would allow him to cure the monetary judgment, and (2) he deposits with the bankruptcy court clerk all rent due to the landlord within the thirty-day period following the bankruptcy filing. If a debtor complies with those requirements, subsection (b)(22) is suspended, and the landlord may not proceed with execution of a judgment for possession for thirty days after the bankruptcy case is filed.

In this post-BAPCPA case, the Debtors did not file and serve a certification setting forth the circumstances under which they would be allowed to cure the $7,600.00 judgment under Tennessee law, nor did they deposit any rental funds with the clerk. Accordingly, § 362(b)(22) expressly excepts Mr. Eisenbach's judgment for possession of the House from the automatic stay provisions, and his actions taken on November 1, 2005, to evict the Debtors from the House were not violations from the automatic stay imposed on October 31, 2005, when the Debtors commenced their bankruptcy case.

Nevertheless, even though the automatic stay did not prevent the Debtors' eviction, it did take effect with respect to their personal property located within the House, and any effort to collect a monetary judgment or to exercise control over the Debtors' property would violate the automatic stay. Therefore, once the Debtors' bankruptcy petition was filed, Mr. Eisenbach could not exercise control over the Debtors' personal property located in the House, and in fact, he had an affirmative

8

duty to turn over such property, pursuant to 11 U.S.C. § 542(a) (2005), which states that any entity in possession or control of property of the estate, whether it is to be administered by the chapter 7 trustee or exempted by the debtor, must turn it over.

> The language of this turnover provision is mandatory. This mandatory language squares with the language and impact of the automatic stay. By requiring a creditor to turn over property of the estate upon the filing of a bankruptcy petition, § 542(a) prevents the continued exercise of control over property of estates – a violation of the automatic stay. Thus, § 542(a) works to avoid what § 362(a) forbids – the retention of property of the estate after filing.

*Unified Peoples Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1,4 (B.A.P. 10th Cir. 2005) (footnote omitted).

In the Sixth Circuit, a creditor that has repossessed property of the debtor must turnover the property upon the filing of a bankruptcy petition, and the failure to do so "constitutes 'the exercise [of] control over property of the estate' for purposes of the automatic stay in 11 U.S.C. § 362(a)(3)[,]" such that a creditor's post-petition retention of property of the debtor may constitute a willful violation of the stay. *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 682, 688 (B.A.P. 6th Cir. 1999). "A violation is willful if 'the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case.'" *Printup*, 264 B.R. at 173 (quoting *Walker v. Midland Mortgage Co. (In re Medlin)*, 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996)).

> A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.
>
> Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

9

*Printup*, 264 B.R. at 173 (quoting *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)); *see also In re Dunning*, 269 B.R. 357, 362 (Bankr. N.D. Ohio 2001) (a willful violation of the automatic stay does not require a specific intent to violate the stay). If the court determines that a willful violation occurred, and the debtor suffered any injury due to the violation, the statute mandates an award of actual damages, including costs and attorneys fees, and allows for punitive damages in appropriate circumstances. 11 U.S.C. § 362(k)(1) (2005).

Here, there is no question that Mr. Eisenbach exercised control over the Debtors' personal property contained in the House for thirteen days after they filed their bankruptcy case, thus violating the automatic stay. During that time period, some of the Debtors' personal property was lost, through theft or disposal, such that the Debtors suffered an actual injury as contemplated by the statute. Furthermore, because Mr. Eisenbach had personal knowledge of the Debtors' bankruptcy filing for twelve of those days, his continued control over the Debtors' personal property constituted a willful violation of the automatic stay, and the Debtors "shall recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1).

Although the Debtors are entitled to actual damages, they offered only minimal evidence of their monetary loss. Mr. Baird testified that, had they been allowed to remove their property prior to November 5, 2005, they would not have had items stolen, and they would have been able to remove the items they were forced to leave on November 12, 2005, when they were running up against their deadline of midnight. However, as to those items, the only proof of value in the record is Mr. Baird's testimony that he paid $300.00 for the 1984 Toyota truck approximately a year and a half earlier, that he paid $90.00 for the Pro Dish Satellite 500, which is now obsolete, and a catalog

10

page introduced into evidence as Trial Exhibit 1 showing that the retail price for the engine hoist is $164.98. The Debtors did not offer into evidence anything concerning the value of the PlayStation, the gas grill, the box of tools, or the engine stand that were also missing from the House on November 5, 2005,[4] nor did they present proof as to the value of the six garbage cans or the steel pipe left on November 12, 2005.

Mr. Baird testified that he was required to take time off from work during this period, but he did not offer into evidence any proof of lost wages. Both Debtors testified that during the time he had possession of their property, Mr. Eisenbach allowed his dogs to damage their couch cushions, and they introduced the cushions into evidence as Trial Exhibit 5. There is, however, nothing in the record with respect to the value of the couch either before or after it was damaged. The Sixth Circuit has held that the court may not speculate as to damages, *Archer v. Macomb County Bank*, 853 F.2d 497, 500 (6th Cir. 1988), and accordingly, the court finds that the Debtors suffered actual damages, representing the value of the Toyota truck, Pro Dish Satellite, and engine hoist, in the amount of $554.98,[5] for which Mr. Eisenbach is liable.

"[I]n appropriate cases, [an injured debtor] may recover punitive damages," 11 U.S.C. § 362(k)(1), which "are appropriate to deter a pattern of behavior that ignores the automatic stay." *In re Kortz*, 283 B.R. 706, 713 (Bankr. N.D. Ohio 2002) (holding that "[w]hen pre-petition creditors ignore § 362 of the Code, they do so at their peril."). Additionally, "[i]f the bankruptcy court

---

[4] The parties did not dispute that the two wall heaters belonged to Mr. Eisenbach and not the Debtors.

[5] The court recognizes that the values of the Toyota truck and Pro Dish Satellite may be considered somewhat speculative. The court is satisfied, however, that these items had value and given the fact that the values are nominal and that Mr. Eisenbach offered no evidence of a lesser value, the court finds these items to have the values testified to by Mr. Baird at the time of their disappearance.

11

believes that the amount of such actual damages is insufficient to deter the kind of deliberate and repeated violations of the automatic stay which [are] evident in this case, the bankruptcy court is free to impose an appropriate amount of punitive damages." *Dunning*, 269 B.R. at 363 (quoting *Archer*, 853 F.2d at 500).

In determining whether punitive damages are appropriate, the court should consider (1) the nature of the creditor's conduct; (2) whether the creditor has the ability to pay damages; (3) the creditor's motives in violating the stay; and (4) whether there was any provocation by the debtor. *Emberton v. Lobb (In re Emberton)*, 263 B.R. 817, 826 (Bankr. W.D. Ky. 2001). Generally, an award of punitive damages requires a showing of egregious and intentional misconduct. *See, e.g., Kortz*, 283 B.R. at 713 (despite numerous notices of the debtors' bankruptcy case from the debtors, their attorney, and the court, the creditor continued making threatening, belligerent calls to the debtors both at home and at work); *Nissan Motor Acceptance Corp. v. Baker (In re Baker)*, 239 B.R. 484, 490 (N.D. Tex. 1999) (creditor withheld the debtor's vehicle for approximately seven weeks before selling it without permission); *Brown v. Town & Country Sales & Serv., Inc. (In re Brown)*, 237 B.R. 316, 321 (Bankr. E.D. Va. 1999) (creditor withheld the debtor's vehicle for more than three months before returning it).

Around noon on November 1, 2005, Deputy Tinnell, accompanied by Mr. Eisenbach, arrived at the House to serve the Writ of Possession. At that time, Mrs. Baird informed them that she and Mr. Baird had filed their bankruptcy case, and the eviction was halted while this was confirmed. Once Mrs. Baird was told that the bankruptcy filing did not stay the eviction, she called Mr. Baird,

who left work, and she began removing personal items from the House. Mr. Baird arrived at the House shortly thereafter and was advised that he could get only a few items from the House.

Deputy Tinnell testified that while he was changing the locks on November 1, 2005, Mr. Eisenbach complained that the process was taking too long, and he restricted the items that the Debtors could take from the House, stating that the Debtors could return the next day to get their items out of the yard, after which they would be allowed to remove their items from inside the House. Deputy Tinnell recalled that Mrs. Baird was only allowed to remove a few personal items on November 1, 2005, and that the whole eviction process that day took between two and three hours total.

Mrs. Baird testified that they were to meet Mr. Eisenbach at 8:00 a.m. the next morning so that they could begin cleaning up the yard, but he did not show up, and she left. Mr. Eisenbach testified that they were actually supposed to meet at 9:00 a.m., and when no one was there, he left. Both Mrs. Baird and Mr. Eisenbach testified that, later on the afternoon of November 2, 2005, Mrs. Baird called him in an attempt to gain access to the House, at which time he denied her access but stated that he would allow a neighbor to get whatever items Mrs. Baird needed.

The following day, November 3, 2005, Mr. Baird went to speak with the clerk of court at the Loudon County Justice Center, and they returned a call to Mr. Eisenbach. The clerk set up an agreement whereby the parties would meet at the House at 8:00 p.m. so that the Debtors could get medication and other necessary items. At approximately 4:00 p.m., Mr. Eisenbach testified that he had time to go to the House earlier, and he called Mrs. Baird to see if she would meet him then. Mrs. Baird was unable to do so, and the parties met at the House at 8:00 p.m. that evening. Mr.

13

Baird testified that when Mr. Eisenbach saw him enter the House, Mr. Eisenbach asked why he was there, stating that he was not welcome, and only Mrs. Baird was allowed in to retrieve the items she needed. Mr. Baird also testified that Mr. Eisenbach threatened that if he wanted "to keep this silly court stuff going on, then I can make life even more difficult for you. If that's how you want it, I can do it." Mr. Eisenbach did not refute this testimony.

After the hearing before this court on November 10, 2005, Mr. Eisenbach agreed to allow the Debtors access to clean up the yard through November 11, 2005, and he agreed that they could finish removing their personal property from inside the House on November 12, 2005. The Debtors arrived at the House at approximately 9:30 a.m. on November 12, 2005, with their teenage nephew, Devon Baird, who was going to help them move, and their neighbor, Gordon Leonard, who was there to watch the Debtors' young children. Mr. Eisenbach arrived, along with Deputy McGinley, and at that time, there were more delays. First, Mr. Eisenbach delayed the Debtors because they did not have a U-Haul truck, and second, he refused to allow their nephew, Devon Baird, or their neighbor, Mr. Leonard, to enter onto the property, calling them "trouble-makers." Mr. Eisenbach explained that he thought that the Debtors would have brought a U-Haul so that they could move in a timely manner since that was their last day to have access to the House. He also stated that he did not know the Debtors' nephew, and he did not believe Mr. Leonard, who walked with a cane, could really assist with the move. At trial, Devon Baird testified that Mr. Eisenbach had met him twice, with the final time being only a few days prior to the eviction.

At some point during the morning on November 12, 2005, Mr. Eisenbach attempted to give a letter to Mr. Baird, who refused to take it. Ultimately, Mr. Eisenbach stuck the letter into Mr.

14

Baird's pocket and was instructed by Deputy McGinley not to touch Mr. Baird. This letter, dated November 11, 2005, stated the following:

> Please consider this formal notice that tomorrow will be your last opportunity to remove ALL of [sic] belongings and to clean up your garbage from the property at 107 Abbott Road.
>
> I have provided you access to the property from the day you were evicted, for failure to pay rent for almost 2 ½ years, through last Saturday and again this week from Thursday at lunch through Saturday. Therefore, anything left behind will [sic] disposed of and the expenses charged back to you, along with attorney's fees.
>
> Please remember that while you are being provided access to the property that <u>you are responsible for any damages to the property.</u>
>
> **Please also be advised that you and anyone with you enter this property at your own risk.**
>
> If you or any of your household or friends return to the property after Saturday, criminal trespass charges will be filed.

TRIAL EX. 2.

Sometime later in the afternoon of November 12, 2005, Mr. Eisenbach returned to the House, and an argument erupted between him and Mr. Leonard, who was sitting in a van parked on the street where he could watch the House to ensure that it was not burglarized. Devon Baird, Mr. Leonard's children, and the Debtors' children were also in the van. Mr. Baird called the Loudon County Sheriff's Department, and Deputy McGinley returned to the House, at which time he informed Mr. Eisenbach that Mr. Leonard was free to park on the public street, and he would not order him to move his vehicle. Mr. Baird testified that this scene delayed his ability to pack and move by another hour or so.

At approximately 8:00 p.m. on November 12, 2005, Mr. Eisenbach returned to the House with two officers from the Loudon County Sheriff's Department, including Corporal Estes, who testified that Mr. Eisenbach complained about the Debtors still being present on the property after dark. Corporal Estes also testified that Mr. Eisenbach stated that he was concerned about the Debtors' safety since the utilities had been turned off, but he was frustrated with the Debtors' failure to cooperate with him. Mr. Baird informed Corporal Estes that the parties had agreed that the Debtors had until midnight; however, Mr. Eisenbach initially claimed that only Deputy McGinley and Mr. Baird were parties to that agreement. Mr. Baird testified that they contacted Deputy McGinley, who confirmed that the Debtors had until midnight, and Corporal Estes advised Mr. Eisenbach that he would honor that agreement.

In order to have them off of the property by midnight, Mr. Baird testified that he had two Toyota trucks towed to Mr. Leonard's yard and that he and Mr. Leonard agreed that he would remove them by Tuesday, November 15, 2005; however, he removed them sooner because Mr. Leonard received a letter from Mr. Eisenbach threatening to have them towed to the junkyard if they were not removed. Mr. Eisenbach acknowledged that he sent a letter to Mr. Leonard regarding removal of Mr. Baird's vehicles from his yard, since it was a violation of the subdivision restrictive covenants to have them there.

With respect to the garbage cans, the 1984 Toyota truck, the steel pipe, and the Pro Satellite Dish that the Debtors left on the premises after November 12, 2005, Mr. Eisenbach testified that he did not dispose of them or do anything whatsoever with them. Additionally, Mr. Baird acknowledged that he never contacted Mr. Eisenbach about retrieving those items.

Although there is a contentious relationship between these parties, and the Debtors are not entirely without fault as to the leisure in which they moved their property, based upon the record, the court finds that Mr. Eisenbach's continued exercise of control over the Debtors' personal property in willful violation of the automatic stay for twelve days was unreasonable, intentional, and egregious such that punitive damages are warranted. Mr. Eisenbach testified that he wanted the Debtors to vacate the House and remove their personal property; however, his continued interference served only to prolong the very action he sought. On the day of the initial eviction, Mr. Eisenbach limited the items that he allowed the Debtors to take, admittedly because he was impatient after waiting to verify their bankruptcy and clarify their rights. Subsequently, the Debtors were denied access to the House on numerous occasions, and quite simply, were at the mercy of Mr. Eisenbach.

Finally, on November 12, 2005, the date upon which the parties agreed would be the Debtors' final day to remove their property from the House, Mr. Eisenbach continually interfered with the Debtors' ability to do so. First, Mr. Eisenbach refused access because the Debtors had not brought a U-Haul. Second, Mr. Eisenbach refused to allow their nephew to help them move. Third, Mr. Eisenbach caused a scene with Mr. Leonard, in the presence of the Debtors' small children, although he testified that he was unaware that they were in the van. Fourth, Mr. Eisenbach attempted to have the Debtors removed from the House at 8:00 p.m., in contradiction of the agreement that they would have until midnight. Two of these disturbances resulted in members of the Loudon County Sheriff's Department being called out to the House, further delaying the Debtors' ability to remove their belongings. Finally, Mr. Eisenbach made both verbal and written threats to dispose of the Debtors' property.

Mr. Eisenbach's impatience on November 1, 2005, and continuing through November 12, 2005, may have been the culmination of a tumultuous relationship with the Debtors; however, that does not excuse his continued control over the Debtors' personal property, and his continued interference with their ability to regain possession thereof is the kind of action that the automatic stay was meant to prevent. Accordingly, the court finds that the circumstances are appropriate and that the Debtors shall also recover punitive damages in the amount of $500.00 from Mr. Eisenbach.

An order consistent with this Memorandum will be entered.

FILED: January 27, 2006

                              BY THE COURT

                              */s/ RICHARD STAIR, JR.*

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE